AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

**FILED**
SEP -6 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. **19MJ3808**
Forensic Images of cellular phones seized from Javier )
Peñaloza, in the custody of United States Postal )
Inspection Service, 815 E Street, San Diego, CA 92101 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2252 and 2252A | Certain activities related to images of minors engaged in sexually explicit conduct and child pornography |

The application is based on these facts:

See Attached

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Darin M. White, Postal Inspector, U.S. Postal Service
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/5/19

_____
*Judge's signature*

City and state: San Diego, CA       Hon. Barbara L. Major, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Darin M. White, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I am a Postal Inspector employed by the United States Postal Inspection Service (USPIS) in San Diego, California. I have been employed as a Postal Inspector since March 2008, and am currently assigned to the Mail Theft and Violent Crimes Team. My primary responsibility is the investigation of identity theft and fraud involving the U.S. Mail. While conducting my duties, I am in contact with other law enforcement contacts and have spoken with other law enforcement personnel, suspects, victims, and witnesses and learned different methods by which the crime of identity theft and fraud is committed. Prior to that, I was employed as a Diversion Investigator for the Drug Enforcement Administration for 5 years where I was responsible for conducting narcotics and fraud investigations

2. My experience as a Postal Inspector has included the investigation of cases involving the use of computers and the Internet to commit crimes. For the past five years I have been assigned as an affiliate agent to the San Diego Internet Crimes Against Children (ICAC). During my experience with the ICAC, I have received training and gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer crimes, computer evidence identification, child pornography identification, computer evidence seizure and processing, and various other criminal laws and procedures. I have personally participated in the execution of search warrants involving the search and seizure of computer equipment.

3. This affidavit is made in support of an application by the United States of America for the issuance of a warrant to search the forensic image of data previously extracted from two cellular phones seized from Javier Peñaloza on March 29, 2019, pursuant to a warrant obtained by agents from the Drug

1

Enforcement Administration (DEA) on March 26, 2019, which forensic images are currently maintained on a hard drive located in evidence at the United States Postal Inspection Service, 815 E Street, San Diego, California, within the Southern District of California, as described more fully in Attachment A, for the items described in Attachment B, which items constitute evidence, fruits, and instrumentalities of violations of Federal laws, namely, 18 U.S.C. §§ 2252 and 2252A, certain activities related to materials involving the sexual exploitation of children and constituting or containing child pornography.

4. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, my review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## FACTS IN SUPPORT OF PROBABLE CAUSE

5. On March 26, 2019, agents from the DEA obtained Federal Search Warrant #19MJ1268 authorizing agents to search the residence located at 6832 Upton Court, San Diego, CA 92111, within the Southern District of California. The warrant also authorized the agents to seize and search cellular devices for evidence related to narcotics trafficking activities.

6. On March 29, 2019, agents from the DEA executed the warrant. During the execution of the warrant, agents arrested Javier Peñaloza and seized numerous items of evidentiary value. Agents seized a white Samsung Cell phone (**Target Phone 1**) and a gold Galaxy S6 Edge Cell phone (**Target Phone 2**), as further

described in Attachment A. On April 18, 2019, the two **Target Phones** (and other electronic items) were transferred from the DEA San Diego Field Office to Postal Inspector Ana Flores, in San Diego, CA. On that same date, Inspector Flores submitted both **Target Phones** to the U.S. Postal Inspection Service Forensic Laboratory for search pursuant to the warrant. Analysts with the Forensic Laboratory extracted data from the **Target Phones** using forensic software, and copied the forensic image of the data to a hard drive, along with the data extracted from other seized computer and digital items.

7. On May 24, 2019, Inspector Flores received the Target Phones back from the Forensic Laboratory. Inspector Flores also received a hard drive which contained the results from the forensic imaging of the **Target Phones** and other computer and digital items. The forensic images of the **Target Phones** are identified within the larger hard drive as Exhibit 1 (**Target Phone 1**) and Exhibit 2 (**Target Phone 2**).

8. On August 2, 2019, in preparation for the proffer of Javier Peñaloza, Inspector Flores began reviewing the forensic images of **Target Phone 1** with the intent to print the photos and take a copy to the U.S. Attorney's Office for review with Peñaloza. Inspector Flores opened the file folder labeled "Images" and waited for the images to load. As Inspector Flores waited for the images to load, she observed the first photo in the file contained four images arranged on one pane. Inspector Flores observed the bottom left side photo depicted a young Caucasian girl that appeared to be in her teens. Inspector Flores opened this photo and further observed the top right side photo depicted a young Caucasian girl that was completely naked wearing a white tank top that was pulled up and her legs were spread open. The young girl was giving oral sex to a male that was completely naked. Inspector Flores described the young girl as in her early teens. The top left side corner depicted a large black and white dog that was engaged in a sexual act

3

with a naked individual. The naked individual was backed into the dog and that individual was giving oral sex to a male that was completely naked. Inspector Flores could not tell the age or the gender of the individual the dog was engaged with because this person was crouched on their knees and was facing away. The bottom right side corner photo depicted a clothed young Caucasian girl that was crouched on her knees and was looking up as she was giving oral sex to a male. Inspector Flores indicated that the girl also appeared to be in her teens.

9. On or around August 12, 2019, I spoke with Inspector Flores who relayed the information in the above paragraph about the possible image containing child pornography which she located on **Target Phone 1**. Inspector Flores stated that after seeing the suspected child pornography image, she stopped review of **Target Phone 1** and contacted myself and the U.S. Attorney's Office for further guidance. On or around August 12, 2019, I met with Inspector Flores and viewed the image in question. The part of the image that caught my attention was the image in the upper right corner of the four image set. The girl in the image appeared to be a prepubescent female performing oral sex on an adult male, and constituting child pornography within the meaning of 18 U.S.C. § 2256.

10. On or around August 12, 2019, Inspector Flores informed me that while reviewing **Target Phone 2** she found the same image described above in paragraph 8. Inspector Flores informed me that both cell phones belonged to Javier Peñaloza.

11. As a result of my training and experience in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the receipt, distribution and possession of child pornography.

   a. These individuals may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasizing while viewing

4

children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

      b. These individuals may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, video tapes, books, sliders and/or drawings or other visual media. These individuals often use these materials for their own sexual arousal and gratification. Furthermore, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

      c. To the extent these individuals possess and maintain "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., they almost always maintain those hard copies in the privacy and security of their home. They typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and video tapes for many years. "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

      d. Likewise, these individuals often maintain their digital or electronic collections of child sexual exploitation images in a safe, secure, and private environment, such as a computer and surrounding area, or on cellular telephones. These collections are often maintained for several years and are kept close by, usually at the individual's residence, on his or her person, or in his or her vehicles, to enable the individual to view the collection, which is valued highly.

      e. These individuals also may correspond with and/or meet others to share information and materials; are rarely able to completely destroy

correspondence from other child pornography distributors/collectors; conceal correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f. These individuals prefer not to be without their child sexual exploitation images for any prolonged time period. Collectors will take their collection with them if they change residences, as the collection is considered to be a prized possession. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world. That said, there are individuals with a sexual interest in children who download and view digital images of child sexual exploitation, and delete it in order to avoid detection by law enforcement or other people. However, even in cases where these images are deleted, or concealed via encryption software, forensic examiners can use specialized tools to recover the deleted files or access encrypted files.

g. These individuals often use specialized software to conceal the existence of evidence and/or destroy said evidence. There are a variety of different programs that an individual can use to accomplish these objectives, many of which are free. Additionally, these individuals have been known to store child pornography in unconventional physical locations, as well as in unusual digital locations on computers and cellular phones. These files and folders, or applications, have been misnamed or renamed in an attempt to mislead investigators.

h. These individuals will often download and store images of children they know or with whom they have communicated, as well as their communications with those children. The images may not necessarily be pornographic or obscene in nature; however, they are often used for the individuals' sexual gratification.

12. Based upon my experience and training, Peñaloza displays the characteristics of an individual involved in the receipt and possesson of child pornography. Specifically, images of child pornography were located within the forensic images of two separate phones belonging to Peñaloza.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION AS TO ANY CELLULAR TELEPHONE

13. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process

and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

14. Following the issuance of this warrant, I will collect the forensic image of the data extracted from the **Target Phones** and subject that data to analysis. All forensic analysis of the data contained within the telephones and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

15. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within sixty (60) days, absent further application to this court.

## CONCLUSION

16. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of violation of 18 U.S.C. §§ 2252 and 2252A may be located on the seized items described in Attachment A. I, therefore, respectfully request that the attached warrant be issued authorizing the seizure of the items listed in Attachment B.

Darin M. White, Postal Inspector
U.S. Postal Inspection Service

Subscribed and sworn before me this _5th_ day of September, 2019.

Hon. BARBARA L. MAJOR
United States Magistrate Judge

8

## **ATTACHMENT A**

PROPERTY TO BE SEARCHED

The property to be searched is described below:

- Forensic Image of data extracted from one White Samsung Cell Phone (**Target Phone 1**), seized from Javier Peñaloza on or about March 29, 2019, USPIS Evidence #IS0001450498

- Forensic Image of data extracted from one Gold Galaxy S6 Edge Cell Phone (**Target Phone 2**) seized from Javier Peñaloza on or about March 29, 2019, USPIS Evidence #IS0001450499

The forensic images are currently maintained on a hard drive located in evidence at the United States Postal Inspection Service, 815 E Street, San Diego, California 92101, and identified as Exhibits 1 and 2 on that hard drive.

## ATTACHMENT B
## ITEMS TO BE SEIZED

Authorization is sought to search for and seize evidence that relates to the violation of 18 U.S.C. §§ 2252 and 2252A. This authorization includes the search of electronic data to include deleted data, remnant data and slack space. The seizure and search of will be conducted in accordance with the "Procedures For Electronically Stored Information" provided in the affidavit submitted in support of this warrant. Items to be seized include the following:

a. Evidence reflecting use, dominion and control of the device such as communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

i. tending to indicate efforts to send, receive or possess child pornography as defined by 18 U.S.C. § 2256;

ii. tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to send, receive or possess child pornography as defined by 18 U.S.C. § 2256;

iii. tending to identify co-conspirators, criminal associates, or others involved in sending, receiving or possessing child pornography as defined by 18 U.S.C. § 2256;

iv. tending to identify the user of, or persons with control over or access to, the subject phone; or

v. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.